### DIAMOND et al. v. HODGES.

### No. 11441.

Court of Civil Appeals of Texas. Dallas.

March 4, 1933.

Hughes & Monroe and O. F. Wencker, all of Dallas, for appellants.

Mack L. Vickrey, of Dallas, for appellee.

BOND, Justice.

This is an appeal from an interlocutory order of the district court of Dallas county, granting a temporary injunction to prevent a sale under the terms of a deed of trust, and declaring, or attempting to declare, due a note and attorney's fee thereon.

On January 21, 1932, Charles O. Hodges, appellee, executed to W. H. Diamond a promissory note in the sum of $60,000, with interest thereon from said date until paid at the rate of 6 per cent. per annum, interest payable semiannually as it accrues on the 21st day of July and the 21st day of January of each and every year for five years, the maturity date of said note. The note provides that a failure to pay "any installment

of interest due thereon shall, at the election of the holder, mature same, and it shall at once become due and payable and subject to foreclosure proceedings," under the terms of the deed of trust. The note further provides that, in default of payment of principal and interest and the note is placed in the hands of an attorney for collection, etc., 10 per cent. additional on the principal and interest shall be added as attorney's fee.

Simultaneously with the execution of said note, Charles O. Hodges executed to O. F. Wencker, trustee, for the use and benefit of W. H. Diamond and his assigns, a deed of trust on property situated in the city of Dallas, known as the St. George Hotel, to secure the payment of said note. Said deed of trust also bore an optional acceleration clause, as did the said note, authorizing the trustee to sell the property after giving notices, etc.

Soon after the maturity of the July 21, 1932, installment of interest, W. H. Diamond died testate, and W. C. Diamond, appellant, became the owner and holder of said note, demanded payment of the principal and interest, and in addition thereto exacted a penalty of $6,180 attorney's fee, on account of the default in payment of $1,800, the semi-annual installment of interest, and acceleration of the maturity of the principal, and directed the said trustee to sell the property under the terms of the deed of trust, and as directed the said trustee proceeded with such sale, posted notices, and advertised said property for sale to satisfy said indebtedness.

On a hearing, the district court issued the temporary injunction.

We have reviewed the pleadings and evidence presented to the trial court and conclude that it did not abuse the discretion necessarily imposed on it in ordering the temporary injunction, thereby preventing appellants from selling the property until a trial of the cause. The suit, as pleaded and presented by evidence, challenges the right of W. H. Diamond to exercise the option to accelerate the maturity of the note, and to visit upon appellee the penalty of $6,180 attorney's fee on account of the failure to pay. W. H. Diamond and Charles O. Hodges had been for many years cordial and intimate friends, and Hodges being unable to pay the principal or installment of interest, on account of the financial depression which prevailed at that time and now, advised his friend of the situation and that he would try to refinance the loan and pay it off. Whereupon W. H. Diamond remarked, "Don't you worry about what you owe me, as it is too hot." Notwithstanding the feeling of security which their said relationship and said remarks might reasonably repose in Charles O. Hodges, W. H. Diamond immediately placed the note in the hands of an attorney, and he, during his lifetime, and appellants, since his death, have demanded of the maker payment of the principal, interest, and attorney's fee.

An optional acceleration of maturity of a note can be waived by the acts and words of one who holds right of election, as was held by our Supreme Court in San Antonio Real Estate Bldg. & Loan Ass'n v. Stewart, 94 Tex. 441, 61 S. W. 386, 389, 86 Am. St. Rep. 864, as follows: "But, aside from this, while neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an installment so as to estop him from relying upon such default. To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default. The principle of estoppel by waiver would, we think, have proper application in such a case."

In the case at bar, if appellant believed from the long and intimate association between him and W. H. Diamond, and from the acts and declarations of W. H. Diamond, it could be reasonably concluded that the option of acceleration of maturity of the note would not be exercised, then neither W. H. Diamond nor appellants could mature the whole of the indebtedness, exact the penalty of attorney's fee, and thereby sell the property to satisfy their demands, without giving the maker an opportunity to pay the principal and interest, and without the visitation of such penalty. This is a matter for a determination on the trial of the case, and the court below, in holding the matter in statu quo by a temporary injunction, exercised sound discretion. As said by Chief Justice Jones of our court, in the case of Midland Bldg. & Loan Ass'n v. Sparks, etc., Church, 35 S.W.(2d) 774, 775:

"The issuance of a temporary writ of injunction is merely a provisional remedy allowed by the court, before the trial of this case on its merits, for the sole purpose of preserving the subject-matter of the controversy as it existed at the time the suit was instituted. As a provisional remedy, the function of the temporary injunction in the instant case is to prevent appellants from selling the property until the trial of the suit, which challenges the right to sell, has determined the issues of law and fact made by appellees' petition. The issuance of the temporary writ of injunction did not determine the issues of law or fact involved in the main suit, and they are left as they existed prior to the issuance of such writ.

"In any particular case the issuance of a temporary writ of injunction rests largely in the discretion of the trial court, and his

action, in either granting or refusing to grant such writ, cannot be disturbed, unless it be made to appear that the discretion thus lodged was abused by the order made. So, in the instant case, the sole question for review is: Did the trial court abuse its discretion in granting this writ and thereby maintaining the existing status of the property. If the petition filed by appellees in the suit alleges no cause of action against appellants, in that its allegations fail to show that appellees have alleged a valid defense to the sale of their property under the deeds of trust, or if the petition does allege a cause of action, but, at the hearing, the evidence failed to disclose any issuable fact to sustain such cause of action, then, in either event, the trial court abused its discretion in granting the temporary writ. On the other hand, if the petition does allege a cause of action and the hearing shows the existence of evidence tending to sustain it, then there was no abuse of discretion by the trial court in issuing the temporary writ."

From what we have said, the judgment of the lower court is affirmed.

Affirmed.